IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN FREDERICK HOY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:13-cv-01362 |
| | : | |
| CAROLYN W. COLVIN, ACTING | : | Hon. John E. Jones III |
| COMMISSIONER OF SOCIAL | | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

**August 20, 2014**

**Introduction**

Plaintiff John Frederick Hoy has filed this action seeking review of a

decision of the Commissioner of Social Security ("Commissioner") denying Hoy's

claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is

disabled and "insured," that is, the individual has worked long enough and paid

social security taxes. Hoy met the insured status requirements of the Social

Security Act through December 31, 2016. Tr. 14.[1]

---

[1] References to "Tr.\_" are to pages of the administrative record filed by the Defendant as part of the Defendant's Answer.

Hoy protectively filed his application for disability insurance benefits on September 5, 2011, alleging that he became disabled on May 31, 2011.  Tr. 12, 158.  Hoy had been diagnosed with several impairments, including degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), hypertension, diabetes mellitus type 2, and depression.  Tr. 14-15.  On December 1, 2011, Hoy's application was initially denied by the Bureau of Disability Determination. Tr. 99.

A hearing was conducted by an administrative law judge ("ALJ") on September 27, 2012, where Hoy was represented by counsel.  Tr. 27-88.   On October 9, 2012, the ALJ issued a decision denying Hoy's application.  Tr. 12-21.  On March 31, 2013, the Appeals Council declined to grant review.  Tr. 1.  Hoy filed a complaint before this Court on May 17, 2013.   Supporting and opposing briefs were submitted and this case became ripe for disposition on October 30, 2013 when Hoy filed a reply brief.

Hoy appeals the ALJ's determination on three grounds: (1) the ALJ erred in finding that Hoy was capable of performing light work, (2) the ALJ erred in evaluating the medical opinions of record, and (3) the ALJ improperly discounted Hoy's credibility.  For the reasons set forth below, this case is remanded to the Commissioner with directions to award benefits as of Hoy's alleged onset date of May 31, 2011.

**Statement of Relevant Facts**

Hoy was 52 years of age at his alleged onset date; he has a high school education, and is able to read, write, speak and understand the English language. Tr. 35, 41, 194. Hoy's past relevant work included work as a flagger, which is classified as light, unskilled work, as a forklift operator, which is medium, semi-skilled work, and as a stocker, which is medium, unskilled work. Tr. 81.

A.   **Hoy's Physical Impairments**

Hoy presented to physicians at Kandra, Fierer & Kushkin, Associates, Ltd. from 2009 and into 2011 with various complaints.[2] Tr. 218-260. Though much of the writing in the notes is illegible, Hoy did complain of chronic low back pain on March 11, 2010, May 11, 2010, July 13, 2010, September 14, 2010, and July 19, 2011. Tr. 219-20, 224, 226, 228, 230. On July 19, 2011, Hoy complained of coughing and wheezing,[3] as well as pain from a previously fractured right ankle. Tr. 218.

On November 3, 2011, Hoy presented to Christine Daecher, D.O., a state agency consultant, for an examination. Tr. 262-70. At this appointment, Hoy stated that he had difficulty breathing, but had never been hospitalized for this issue. Tr. 262. He further stated that he suffered from low back pain; this pain had

---

[2] The signature of the physician(s) is illegible.
[3] This was the only legible complaint of coughing and wheezing. Previously, on October 14, 2009, Hoy was given an exercise stress test; the findings were within normal limits. Tr. 244.

begun thirty years prior, but had worsened during the previous seven years.  Id.

Hoy described this pain as aching, chronic, constant, and radiating.  Id.  The pain

radiated down both legs into the anterior thighs when Hoy stood for more than four

or five hours.  Id.  Hoy's chronic shortness of breath moderately limited his

activities, and was occasionally accompanied by a cough.  Id.

On physical inspection, Hoy had diffused, diminished breathing and

exhibited tachypnea.  Tr. 263.  He had a flattened lumbar spine and decreased

range of motion in the lumbar flexion and lateral bending to the right.  Id.  Hoy had

a positive straight leg test bilaterally and an asymmetric gait.  Id.  Though Hoy was

able to "get on and off the exam table, and up-and-down from chairs with ease," he

was unable to squat and "had significant difficulties laying down and sitting up."

Id.  He also demonstrated abnormal toe walking; while performing toe walking, he

had a limp and had balance problems.  Id.  Dr. Daecher noted that it was "doubtful

that conservative measure will provide much relief and I do not believe he is a

surgical candidate."  Tr. 263-64.

Dr. Daecher diagnosed Hoy with lumbar disc degeneration.  Tr. 264.  She

noted that there were "[n]o positive Waddell findings[4] which lowers the likelihood

---

[4] Waddell findings, or nonorganic findings, are "physical findings that do not have a direct
anatomical cause and are distinct from physical findings of organic pathology." Laura Jensen,
M.D., *Nonorganic findings – What are they?*, 51 B.C. Med. J. 106, 106 (April 2009). "The
presence of nonorganic findings does not mean the pain is imagined or that the person is
malingering. Nonorganic findings, especially findings in three or more of the five types, indicate
psychosocial factors that need to be considered in the management of patients." Id.

of psychological" low back pain.  Id.  Dr. Daecher stated that Hoy's reflexes were

"abnormal at the S1 and Babinski reflex on the LLE which may correlate with

spinal stenosis."[5]  Id.  Dr. Daecher opined that Hoy likely had "age and occupation

appropriate" spinal arthritis, "as well as disc disease from his injury years ago.  His

[radiating] back pain . . . is likely due to spinal nerve root impingement."  Id.

Dr. Daecher also diagnosed Hoy with chronic airway obstruction.  Tr. 264.

In that vein, she noted that

> [o]n exam he ha[d] diminished breath sounds and a slightly increased
> respiratory rate.  With the activity of ROM testing, [his] respiratory
> rate does increase out of proportion to what is expected . . . His degree
> of dyspnea with activities he describes is likely true.  There is no
> clubbing of his fingernails on exam as would be expected . . . He most
> likely had emphysema predominant COPD.  This is progressive and
> permanent.

Tr. 270.

Dr. Daecher opined that Hoy was limited to occasionally lifting or

carrying 2-3 pounds, and could rarely carry up to ten pounds.  Tr. 283.  With

the use of a cane, Hoy could stand or walk for one to two hours during an

eight hour workday.  Id.  He was able to sit for eight hours during a

---

[5] "Spinal stenosis is a narrowing of the open spaces within your spine, which can put pressure on your spinal cord and the nerves that travel through the spine."  MayoClinic.com, Spinal Stenosis Definition, *available at* http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/basics/definition/con-20036105 (last visited August 15, 2014).
This condition is generally confirmed through the use of an MRI or CT scan; it is unlikely that an x-ray will confirm spinal stenosis.  See, MayoClinic.com, Spinal Stenosis Tests and Diagnosis, *available at* http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/basics/tests-diagnosis/con-20036105 (last visited August 15, 2014).

workday, but must be provided with an option to sit or stand at will.  Id.  Dr.

Daecher believed that Hoy should never crouch, and could only rarely

balance, climb, bend, kneel, or stoop.  Tr. 268.  He could occasionally reach

and feel with his hands.  Id.  Dr. Daecher believed that Hoy was limited in

his ability to be exposed to poor ventilation, fumes, odors, gases,

temperature extremes, heights, or moving machinery.  Id.

On November 4, 2011, an x-ray was taken of Hoy's lumbar spine.  Tr. 271.

This x-ray revealed mild degenerative disc disease changes at the L5-S1 level, and

a mild anterior compression deformity at the T12 level.  Id.  The anterior

compression deformity "may" be a chronic condition.  Id.

On January 30, 2012, Robert Ettlinger, M.D., Hoy's treating physician,

examined Hoy and completed a physical residual functional capacity assessment.

Tr. 302-04, 272-76.  Hoy was negative for chronic coughing or wheezing,

extremity weakness or numbness, or gait disturbance.  Tr. 302-03.  However, he

was positive for back pain, bone and joint symptoms, and "right elbow pain due to

lateral epicondylitis."  Tr. 303.  Hoy's respiratory effort was normal.  Id.  He had

tenderness and a "mildly" reduced range of motion in his lumbar spine.  Id.  Dr.

Ettlinger diagnosed Hoy with low back pain, hypertension, hyperlipidemia, and

diabetes mellitus.  Tr. 304.

Dr. Ettlinger believed that Hoy was not a malingerer, and emotional factors did not contribute to his symptoms.  Tr. 273.  Dr. Ettlinger believed that pain would frequently affect Hoy's concentration and attention during the workday.  Id.  For that reason, Dr. Ettlinger did not believe that Hoy was capable of even low-stress work.  Id.  Dr. Ettlinger opined that Hoy was capable of sitting for thirty minutes at a time and standing for twenty minutes at a time.  Id.  During the course of an eight-hour workday, Hoy could stand or walk for approximately two hours.  Tr. 274.  Dr. Ettlinger believed that Hoy must be provided with the option to sit or stand at will throughout the workday.  Id.

Dr. Ettlinger further opined that Hoy would require unscheduled breaks throughout the day.  Id.  He also required the use of a cane to walk or stand, and should be allowed to elevate his feet four inches when sitting.  Id.  Hoy was capable of occasionally lifting up to ten pounds, though he could "rarely" lift up to twenty pounds.  Id.  Hoy could occasionally turn his head to the left or right, and occasionally stoop, crouch, or climb ladders and stairs.  Tr. 275.  Dr. Ettlinger believed that Hoy should never twist and could only grasp, twist, or turn objects with his hands for twenty-five percent of the workday.  Id.  Dr. Ettlinger opined that Hoy's impairments would cause him to miss four days of work per month.  Id.

On April 30, 2012, Hoy returned to Dr. Ettlinger for a follow-up appointment.  Tr. 299-301.  Hoy complained of continuing back and ankle pain; he

had not received treatment for these issues in three years.[6]  Tr. 299.  Hoy was

negative for chronic coughing or wheezing.  Id.  He was positive for back pain, as

well as bone/joint pain in his ankle.  Tr. 300.  Hoy's lungs were clear to

auscultation and his respiratory effort was normal, though he had an occasional

cough.  Id.  Hoy's lumbar spine was tender and its range of motion was moderately

reduced; he also had a tender right foot and ankle.  Id.

On September 14, 2012, Dr. Ettlinger completed a second residual

functional capacity assessment.  Tr. 305-09.  Dr. Ettlinger opined that Hoy was

capable of sitting for up to forty-five minutes at a time, and standing for fifteen

minutes at a time.  Tr. 306.  Hoy could sit for less than two hours total during a

workday, and could stand or walk for less than two hours; he also required the use

of a cane for standing or walking.  Tr. 307.  Dr. Ettlinger believed that Hoy must

be provided with an option to sit or stand at will.  Id.  Dr. Ettlinger believed that

Hoy could "rarely" lift up to ten pounds, and rarely twist, stoop, or climb ladders

and stairs; he should never crouch.  Tr. 307-08.  Hoy would require unscheduled

work breaks, and would miss more than four days of work each month.  Id.

## B.    The Administrative Hearing

On September 27, 2012, Hoy's administrative hearing was conducted.  Tr.

27-88.  At that hearing, Hoy testified that he had suffered from chronic back pain,

---

[6] Hoy informed the State Agency that he was not receiving treatment because he did not have insurance, and could not afford to pay for treatment on his own.  Tr. 281.

but by May 2011 the pain had become "really severe" and "almost constant." Tr. 37-38. Hoy suffered from ankle pain on a daily basis; this pain had also grown worse in recent years. Tr. 73-74. Hoy admitted that he had received unemployment compensation until approximately June 2012. Tr. 62-63.

Hoy was able to care for his personal hygiene needs and perform most chores, but could not mow the lawn. Tr. 42-43. When Hoy performed chores, he needed to rest every fifteen minutes due to his back pain. Tr. 43. Hoy cared for a cat, but stated that it was difficult stooping down to clean its litter box. Tr. 46. He was able to shop for groceries, but needed to carry his groceries into his home slowly and in piecemeal fashion. Tr. 57-58. This process took up to two hours because Hoy frequently needed to rest while unloading the groceries. Tr. 68-69.

Hoy testified that he became short of breath from walking up or down three steps, and occasionally became short of breath after getting out of the shower. Tr. 49. Hoy admitted that he smoked, but had reduced his smoking from one pack per day to one-half pack per day. Tr. 49-50. Hoy's increasing low back pain led to poor concentration and hindered his physical movement. Tr. 51. Hoy stated that getting out of bed in the morning was "a new adventure in pain every day." Tr. 53. Hoy testified that he had been prescribed Vicodin, Ultram, and a third medication to treat his back pain, but none of the medications had worked. Tr. 70.

Hoy testified that he was able to sit for fifteen minutes before he needed to stand up.  Tr. 54.  He was able to stand for fifteen minutes before he needed to sit, and could walk for approximately twenty-five minutes before needing to sit.  Tr. 54-55.  The heaviest object that Hoy had recently lifted was his five pound cat; however, Hoy believed he could lift up to ten pounds once during an eight-hour period.  Tr. 56.  Hoy stated that he no longer received medical treatment because he did not have insurance and could not afford to see the doctor.  Tr. 62.  Hoy also testified that his hands would "fall asleep" at odd times and go numb.  Tr. 64.  He would occasionally lose his balance and fall, and therefore used a cane when he left his house.  Tr. 67-68.

After Hoy testified, Brian Bierley, an impartial vocational expert, was called to give testimony.  Tr. 80.  The ALJ asked Mr. Bierley to assume that Hoy was capable of performing light work[7] but must be provided with an option to sit or stand at will.  Tr. 82.  The ALJ also limited Hoy to occasional crouching, kneeling, stooping, bending, balancing, and climbing ramps or stairs; Hoy could rarely climb ladders, ropes, or scaffolds.  Id.  Hoy would not be able to twist, and would need to

---

[7] Light Work is defined by the regulations of the Social Security Administration as work "with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967.

be able to elevate his feet four inches with prolonged sitting.  Id.  Furthermore,

Hoy would need to avoid concentrated exposure to temperature extremes, dust,

fumes, odors, gases, and chemicals.  Id.

Mr. Bierley opined that, given these restrictions, Hoy would not be able to

perform any of his past relevant work.  Tr. 82-83.  However, Hoy would be

capable of performing three jobs that exist in significant numbers in the regional

economy: a small products assembler, an electrical accessories assembler, and a

production assembler.  Tr. 83-84.  Mr. Bierley testified that if a person required the

use of a cane when standing, required excessive unscheduled breaks, or missed

four days of work per month, there would be no work in the national economy that

the individual could perform.  Tr. 84-86.  Mr. Bierley also testified that Hoy did

not have any transferable job skills from his past semi-skilled job.  Tr. 88.

**Discussion**

In an action under 42 U.S.C. § 405(g) to review the Commissioner's

decision denying a plaintiff's claim for disability benefits, the district court must

uphold the findings of the Commissioner so long as those findings are supported

by substantial evidence.  Substantial evidence "does not mean a large or

considerable amount of evidence, but 'rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Pierce v.

Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v.

N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence has been described as

more than a mere scintilla of evidence but less than a preponderance.  Brown v.

Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  In an adequately developed record

substantial evidence may be "something less than the weight of the evidence, and

the possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's finding from being supported by substantial

evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in

the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into

account whatever in the record fairly detracts from its weight."  Universal Camera

Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not

substantial evidence if the Commissioner ignores countervailing evidence or fails

to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058,

1064 (3d Cir. 1993).  The Commissioner must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain

evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203 (3d Cir. 2008).

Therefore, a court reviewing the decision of the Commissioner must scrutinize the

record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner utilizes a five-step process in evaluating disability

insurance benefits claims.  See 20 C.F.R. § 404.1520; Poulos v. Comm'r of Soc.

Sec., 474 F.3d 88, 91-92 (3d Cir. 2007).  This process requires the Commissioner

to consider, in sequence, whether a claimant (1) is engaging in substantial gainful

activity, (2) has an impairment that is severe or a combination of impairments that

is severe, (3) has an impairment or combination of impairments that meets or

equals the requirements of a listed impairment, (4) has the residual functional

capacity to return to his or her past work and (5) if not, whether he or she can

perform other work in the national economy.  See 20 C.F.R. § 404.1520.   The

initial burden to prove disability and inability to engage in past relevant work rests

on the claimant; if the claimant meets this burden, the burden then shifts to the

Commissioner to show that a job or jobs exist in the national economy that a

person with the claimant's abilities, age, education, and work experience can

perform.  Mason, 994 F.2d at 1064.

## A.      The ALJ's Evaluation of Opinion Evidence

On appeal, Hoy argues that the ALJ's determination that he could perform

light work is not supported by substantial evidence.  A residual functional capacity

is "defined as that which an individual is still able to do despite the limitations

caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d

112, 121 (3d Cir. 2000) (quoting Hartranft v. Apfel, 181 F.3d 389, 359 n. 1 (3d

Cir. 1999)).

In reaching a residual functional capacity determination, an ALJ may not "improperly supplant[] the opinions of [a claimant's] treating and examining physicians with his personal observation and speculation." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Furthermore, the ALJ may not disregard a physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant's] credibility'" and may not "substitute his lay opinion for the medical opinion of experts." Id. An "ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

Here, the ALJ was presented with three medical assessments of Hoy's physical limitations. Tr. 262-70, 272-76, 283, 305-09. One assessment was provided by an examining state agency consultant, Dr. Daecher. Tr. 262-70, 283. Two assessments were provided Hoy's treating physician, Dr. Ettlinger. Tr. 272-76, 305-09. All three residual functional capacity assessments limited Hoy to the sedentary exertional level or less based on his ability to sit, walk, and stand, and upon his limited ability to lift and carry weight. Tr. 274, 283, 307-08.

i. **Dr. Daecher's Assessment**

The ALJ rejected the opinion of the consultative examiner, Dr. Daecher, reasoning that it was "inconsistent with the objective findings noted throughout her

consultative examination . . ." Tr. 19.  Specifically, the ALJ felt that Dr. Daecher's

findings regarding Hoy's range of motion, ability to move, and x-ray results were

incompatible with sedentary work restrictions.  Id.  In reaching such a conclusion,

the ALJ misread Dr. Daecher's examination notes.

It is true that Hoy had only slightly limited range of motion in his spine, and

he was able to "get on and off the exam table, and up-and-down from chairs with

ease." Tr. 263, 270.  However, Dr. Daecher also observed that Hoy was unable to

squat and "had significant difficulties laying down and sitting up." Tr. 263.  Hoy

had an asymmetric gait, and while attempting to toe walk, demonstrated balance

issues and a limp.  Id.  Hoy had a positive straight leg raise test in both legs,

indicating nerve root compression.  Id.  Additionally, Dr. Daecher noted that Hoy's

abnormal reflexes were indicative of spinal stenosis, and opined that his radiating

back pain was "likely due to spinal nerve root impingement." Tr. 264.

The limitations prescribed by Dr. Daecher were further supported by her

diagnosis of "progressive and permanent" COPD.  Id.  Dr. Daecher had reached

this diagnosis after observing that Hoy had diminished breath sounds and an

increased respiratory rate.  Id.  She also noted that "[w]ith the activity of ROM

testing, [Hoy's] respiratory rate . . . increase[d] out of proportion to what is

expected." Id.

The totality of the evidence that Dr. Daecher relied upon, much of which the ALJ failed to discuss, was substantial and supported her ultimate conclusions.  The ALJ erred in rejecting Dr. Daecher's assessment based on snippets of information contained within the examination report, while ignoring other evidence that supported Dr. Daecher's assessment.   While the ALJ's treatment of Dr. Daecher's assessment was improper, a more acutely troubling issue was the ALJ's treatment of the assessments offered by Hoy's treating physician, Dr. Ettlinger.

### ii.     Dr. Ettlinger's Assessments

Dr. Ettlinger offered two residual functional capacity assessments; the ALJ gave "significant weight" to Dr. Ettlinger's first assessment, while according "limited weight" to Dr. Ettlinger's second assessment.  Tr. 18.  The ALJ assigned limited weight to the second opinion because, in the ALJ's opinion, it was "internally inconsistent" with the first opinion, was "inconsistent with the other medical evidence of record and [Hoy's] own stated abilities," and because Dr. Ettlinger issued the assessment five months after he last examined Hoy.  Id.

In contrast, the ALJ assigned "significant weight" to Dr. Ettlinger's first opinion because Dr. Ettlinger "had the opportunity to examine [Hoy] and to observe [Hoy's] functional abilities prior to rendering the assessment."  Id.  Additionally, the ALJ believed that Dr. Ettlinger's first assessment was "consistent" with the medical evidence contained within the administrative record.

16

Id.  Despite finding that Dr. Ettlinger's assessment was consistent with the other medical evidence, and despite affording significant weight to this assessment, the ALJ ignored one of Dr. Ettlinger's most significant points; the conclusion that Hoy was limited to sedentary work.[8]  Tr. 274.  The ALJ adequately accounted for any limitation in Hoy's ability to walk or stand by including a sit/stand option in the residual functional capacity determination.  Tr. 16.  However, the ALJ failed to account for Hoy's limitations in lifting.

Every residual functional capacity assessment, including the only assessment that the ALJ afforded significant weight to, limited Hoy to sedentary work or less. See, 20 C.F.R. § 416.967.  Dr. Daecher's assessment limited Hoy to lifting or carrying, at most, ten pounds.  Tr. 283.  Dr. Ettlinger's second assessment likewise limited Hoy to lifting a maximum of ten pounds.  Tr. 308.  Dr. Ettlinger's first assessment was the least restrictive of all three; this assessment limited Hoy to occasionally lifting ten pounds, while rarely lifting twenty pounds.  Tr. 274.

The ALJ rejected all three assessments in favor of finding, against all medical evidence, that Hoy was capable of light work.  Tr. 16.  Thus, in the ALJ's opinion, Hoy was capable of frequently lifting ten pounds, while occasionally

---

[8] In the first assessment, Dr. Ettlinger concluded that Hoy could stand or walk for only two hours, and could only occasionally lift up to ten pounds, though he could "rarely" lift up to twenty pounds.  Tr. 274.  This is consistent with sedentary work. 20 C.F.R. § 416.967. Dr. Ettlinger's second opinion limited Hoy to sitting for only two hours, and standing or walking for up to two hours, thus effectively rendering Hoy disabled. Tr. 307. Because overwhelming evidence supports the conclusion that Hoy could not perform light work, this Court need not address whether the ALJ erred in rejecting Dr. Ettlinger's second opinion.

lifting twenty pounds. 20 C.F.R. § 416.967. In rejecting three medical opinions,

two offered by Hoy's treating physician, the ALJ improperly substituted her "lay

opinion for the medical opinion of experts." Morales, 225 F.3d at 317. The ALJ

rejected these opinions without relying upon any contrary evidence, but rather

rejected these well-reasoned medical assessments based on her personal

interpretation of the findings offered by those physicians. Consequently, the ALJ's

residual functional capacity determination, including her determination that Hoy

could perform light work, is not supported by substantial evidence.[9]

B.     **Award of Benefits**

A district court may award benefits to a claimant only where "the

administrative record of the case has been fully developed and when substantial

evidence on the record as a whole indicates that the Claimant is disabled and

entitled to benefits." Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986)

(citations omitted). In such instances, "it is unreasonable for the court to give the

ALJ another opportunity to consider new evidence concerning the disability

because the administrative proceeding would only result in further delay in the

receipt of benefits." Id.

---

[9] The ALJ also erred in reaching her residual functional capacity determination without the benefit of a physician assessment. See, Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986). See also, Maellaro v. Colvin, 3:12–CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014); Arnold v. Colvin, 3:12-CV-02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014); Gormont v. Astrue, 3:11-CV-02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013); Troshak v. Astrue, 4:11-CV-00872, 2012 WL 4472024, at *7 (M.D. Pa. Sept. 26, 2012).

Here, the record is fully developed.  There is no indication that there are any missing medical records or opinions.  Hoy's treating physician has submitted two residual functional capacity assessments that included detailed assessments of Hoy's functional limitations.  Tr. 272-76, 305-09.  Significantly, the ALJ decided to afford one of these assessments "significant weight" because it was consistent with the medical records as a whole.  Tr. 18.  A state agency physician thoroughly examined Hoy and reviewed all available medical records before submitting a residual functional capacity assessment.  Tr. 262-70, 283.  These limitations corresponded closely to the limitations offered by Hoy's treating physician.

Substantial evidence on the record also indicates that Hoy is disabled.  All three residual functional capacity assessments limited Hoy to lifting or carrying ten pounds only rarely or occasionally.  Tr. 274, 283, 307.  These lifting restrictions place Hoy at a sedentary level of exertion or less, not at a light level of exertion. See, 20 C.F.R. § 416.967 (stating that "[l]ight work involves . . . frequent lifting or carrying of objects weighing up to 10 pounds," while sedentary work "involves lifting no more than 10 pounds at a time").  No physician ever opined that Hoy was capable of light work.

At the time of Hoy's alleged onset date, he was fifty-two years old, making him a "person closely approaching advanced age" under the Social Security Administration's guidelines.  20 C.F.R. § 416.963 (d).  Hoy is a high school

graduate whose education does not provide for direct entry into skilled work.  Tr. 41.  Hoy previously held one semi-skilled job, but this job did not provide Hoy with any transferrable skills.  Tr. 88.  The Social Security Administration's Medical-Vocational guidelines (the "Grids") therefore mandate a finding that Hoy is disabled.  <u>See</u>, 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.14.

Consequently, overwhelming "and uncontradicted evidence" in the administrative record indicates that Hoy was disabled.  <u>Gilliland</u>, 786 F.2d at 185.  Given Hoy's education, work experience, and ability to perform on sedentary work, the Grids mandate a finding of disabled as of Hoy's alleged onset of May 31, 2011.  20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.14.  Under these circumstances, there is no reason to remand for further consideration by the Social Security Administration.

**<u>Conclusion</u>**

A review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence.  Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for an award of benefits.

An appropriate Order will be entered.